In the Matter of. the Appraisal, under the Transfer Tax Act, of the Estate of GEORGE JONES, Deceased.

THE COMPTROLLER OF THE CITY OF NEW YORK et al., Appellants; GILBERT E. JONES et al., as Executors, etc., et al., Respondents.

1. JOINT STOCK ASSOCIATIONS — SHARES ARE PERSONAL PROPERTY AND TAXABLE AS SUCH. The shares of a joint stock association constitute personal property and are taxable as such, irrespective of the character of the property represented thereby, whether real or personal.

2. INTEREST OF DECEASED SHAREHOLDER SUBJECT TO TRANSFER TAX. The interest of a deceased shareholder in the realty of a joint stock association is personal property, and under chapter 215 of the Laws of 1891 a bequest thereof is subject to the transfer tax.

3. METHOD OF ESTABLISHING VALUE OF SHARES. Where the shares are not listed upon the stock exchange or sold in the open market, the value of the realty may be properly considered upon an appraisal in order that their value may be established.

4. AUTHORITIES COLLATED. The distinction between joint stock associations and corporations pointed out and authorities relating thereto discussed.

*Matter of Jones*, 69 App. Div. 237, reversed.

(Argued November 10, 1902; decided December 9, 1902.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered February 14, 1902, which modified and affirmed as modified an order of the New York County Surrogate's Court imposing a transfer tax upon the estate of George Jones, deceased.

The facts, so far as material, are stated in the opinion.

*John R. Dos Passos* and *Edmund F. Harding* for appellants. The shares are personal property. (*A. E. Co.* v. *Ohio*, 166 U. S. 185; *People ex rel.* v. *Roberts*, 4 App. Div. 334; *Matter of Brandreth*, 59 N. Y. Supp. 1092; *Simpson* v. *J. C. C. Co.*, 165 N. Y. 199; *Waterbury* v. *M. U. E. Co.*, 50 Barb. 150; *Rice* v. *Rockefeller*, 134 N. Y. 187; *Kent* v. *Q. M. Co.*, 78 N. Y. 179; *Arnold* v. *Ruggles*, 1 R. I. 165; *Germain* v. *L. S. & M. S. R. Co.*, 91 N. Y. 492; *Matter of Bronson*, 150 N. Y. 8.) The contention that a joint stock association is not an artificial person endowed by law with a perpetual succession, is unsustainable. (Const. of N. Y. art. 8, § 3; *Sandford* v. *Supervisors*, 15 How. Pr. 172; *People ex rel.* v. *Wemple*, 117 N. Y. 147; *Bray* v. *Farwell*, 81 N. Y. 600; *People ex rel.* v. *Coleman*, 133 N. Y. 282; *Waterbury* v. *M. U. E. Co.*, 50 Barb. 160.) The unlimited liability upon the holder does not make his share any the less a proprietary entity in itself. It has not that effect in unlimited liability corporations. (*People ex rel.* v. *Wemple*, 117 N. Y. 146; Black. Comm. 475; Taylor on Corp. [5th ed.] §§ 54–56; *L. Ins. Co.* v. *Massachusetts*, 10 Wall. 566.)

*G. B. Townsend* for respondents. "The New York Times" was a partnership both with reference to its shareholders and its relations with third parties. (17 Am. & Eng. Ency. of Law [2d ed.], 636; *Schwartz* v. *Wechler*, 2 Misc. Rep. 67; *Witherhead* v. *Allen*, 4 Abb. Ct. App. Dec. 628; *Brooks* v. *Dinsmore*, 15 Daly, 428; *People ex rel.* v. *Coleman*, 133 N. Y. 279.) Real estate belonging to a partnership retains the attributes of and is treated as real estate, and as such is not taxable under the Transfer Tax Act. (*Collumb* v.

*Read*, 24 N. Y. 505; *Van Brunt* v. *Applegate*, 44 N. Y. 544; *Fairchild* v. *Fairchild*, 64 N. Y. 471; *Tarbel* v. *Bradley*, 7 Abb. [N. C.] 273; *Darrow* v. *Calkins*, 6 App. Div. 28; *Smith* v. *Jackson*, 2 Edw. Ch. 28; *Buchan* v. *Sumner*, 2 Barb. Ch. 163; Gerard on Tit. [2d ed.] 318; *Matter of Swift*, 137 N. Y. 77; *Matter of Sutton*, 3 App. Div. 208.) Any doubt as to the legality of taxing real estate in this matter should be resolved in favor of the respondents. (*Matter of Swift*, 137 N. Y. 77; *Matter of Fayerweather*, 143 N. Y. 114; *Matter of Euston*, 113 N. Y. 174; *Matter of Harbeck*, 161 N. Y. 217; *Matter of Sutton*, 3 App. Div. 208.)

BARTLETT, J. The single question involved in this appeal is one of law upon undisputed facts.

The late George Jones was a member of a joint stock association known as "The New York Times." The property of this association was represented by the issue of a hundred shares of stock, of which the deceased owned forty-six. This association was formed in January, 1872, its articles being executed by seven associates, and provided in detail for the management of the business; the eighth subdivision thereof reads as follows: "All the property, real and personal, and all the goods and chattels, choses and rights in action, and credits of every name and nature, with the evidence thereof, including the good will of its business of the association heretofore existing, known as 'The New York Times Establishment,' are put in by the undersigned, who are the owners thereof and constitute the value of the shares of the association."

The ninth subdivision reads: "The shares of the association shall represent all the rights and property mentioned in the foregoing article, together with all said property, goods and chattels, rights and credits, as shall from time to time be required, and shall always be divided into one hundred equal shares."

The articles further provided that each of the associates had the power to sell his shares subject to certain conditions

37

not important to be considered at this time. Also that the title to the real estate should vest in the president of the association and be held by him for its use and benefit, subject to the control and disposition of the board of directors, who were clothed with ample powers to conduct the business.

Mr. Jones died on the 12th of August, 1891, leaving a last will and testament, which was duly proved. Certain provisions of this will were read in evidence and disclose the fact that the testator, in disposing of his interests in the association known as "The New York Times," divided it among his legatees, by giving to each a certain number of shares of the stock held by him. He bequeathed some of these shares absolutely and created separate trusts as to certain other shares. It thus appears that the associates, constituting this joint stock association, treated their property, real and personal, as represented by shares of stock, and Mr. Jones in his will saw fit to distribute his interest by adopting the same mode of representation.

It was claimed by the comptroller that these shares were personal property and taxable as shares of stock in an ordinary corporation; the executors contended that as the joint stock association owned this realty, the interest therein of the shareholder was realty also, and as it passed under his will in the direct line was exempt, the statute taxing transfers of realty only when passing to collaterals or strangers. (Laws of 1891, chap. 215.)

The views of the comptroller were adopted by the appraiser and by both surrogates of New York county, but the Appellate Division reversed with a divided court.

The history of joint stock associations both in England and this country is interesting.

Mr. Lindley, in his Law of Companies (fifth edition), at page 2, says: "When unincorporated companies, with a joint stock divided into numerous transferable shares, began to assume importance and to force themselves upon the attention of the legislative and judicial departments of the state, the reception they met with was by no means encouraging. Owing to the

then established rules relating to parties to actions at law and suits in equity, a joint stock company could not practically sue its own debtors, nor could disputes between its members be readily, if at all, adjusted. At the same time the doctrine that each member was answerable for the whole of the debts of the company was studiously promulgated and rigorously enforced."

The learned author discusses at length the growth of joint stock associations in England from an early time until the present day. He has, however, summed up the situation in the quotation already made, to the effect that with all the rights and powers conferred upon them, in the face of vigorous opposition, the doctrine of individual liability has been maintained.

In *People ex rel. Winchester* v. *Coleman* (133 N. Y. 279) Judge FINCH pointed out the many respects in which joint stock associations resemble corporations, but emphasized the fact that the one derives its existence from the contract of individuals, the other from the sovereignty of the state. He said : " The two are alike but not the same. More or less they crowd upon and overlap each other, but without losing their identity, and so, while we cannot say that a joint stock company is a corporation, we can say as we did say in *Van Aernam* v. *Bleistein* (102 N. Y. 360), that a joint stock company is a partnership with some of the powers of a corporation."

This quotation states in a brief manner the law relating to these associations as it exists in this state.

A joint stock company has never appealed to the sovereignty of the state for the right to exist, but by articles of association, which take the place of the charter of a corporation, the associates have been content to do business subject to the individual liabilities of partners.

In 1854 (Chap. 245) the legislature made it lawful for such associations to provide by their articles that the death of any stockholder, or the assignment of his stock, should not work a dissolution, but they should continue as before, and could

only be wound up by the judgment of a court. This law continued in force until the enactment of the "Joint Stock Association Law," passed in 1894, when it was repealed. (R. S. [Banks' 9th ed.] vol. 2, p. 1471.)

The Code of Civil Procedure has also provided for actions by or against an unincorporated association, preserving in part previous legislation and adding thereto new and liberal features. (§§ 1919 to 1924, both inclusive.)

Mr. Beach, in his work on Private Corporations (Vol. 1, § 167), in speaking of joint stock associations, says : "The powers conferred upon them by these enactments are such that for many purposes they are held to be corporations, even though they have nowhere been designated as such, and though the statutes relating to joint stock companies did not so designate them, or have expressly declared that they shall not be so considered. But with respect to the personal liability of members to creditors of the company they are still subject to the common-law rule applicable to partnerships."

The principal feature of the joint stock association is the right of perpetual succession. In this respect it is like a corporation, and enjoys all the advantages flowing from such a privilege.

It has frequently been held in this state that where a tax has been imposed upon all moneyed or stock associations it could not be collected from a joint stock association, for the reason that technically it could not be regarded as a corporation. (*People ex rel. Winchester* v. *Coleman,* 133 N. Y. 279 ; reported below, 37 N. Y. State Reporter, 120.)

In these cases the question was whether a joint stock association was taxable upon its capital under the provisions of the Revised Statutes (1 R. S. 414, § 1) subjecting "all moneyed or stock corporations deriving an income or profit from their capital or otherwise " to such a tax.

The opinions of Mr. Justice BARRETT at Special Term, Mr. Justice VAN BRUNT at General Term and Judge FINCH in this court all considered the question whether a joint stock association was a corporation, and whether the acts creating for it

certain privileges intended to confer a corporate franchise. It was held that while a joint stock association possessed certain corporate powers, nevertheless, it was not a corporation within the meaning of the statute to which reference has been made.

The fact that a joint stock association is not in legal contemplation a corporation, and not liable to taxation under acts seeking to reach corporations, in no way militates against the position assumed by the comptroller in this case. It is competent for private individuals to create a joint stock association, issue shares of stock, and in that form dispose of property by last will and testament. The associates by contract have created the same situation as to shares of stock that a corporation secures by charter.

In the case at bar the appraiser fixed the value of the interest of the estate of the personal property of "The New York Times" at $15,640.00, the real estate at $575,000.00, and the good will of the newspaper, less the existing debts, at $184,000.00.

It is contended on behalf of the executors that this large amount of real estate, which is of greater value than appraised, is not subject to the tax, for the reason that it would descend to the testator's children and was not taxable under the Transfer Tax Law in force at the time of testator's death. The fact is that at the time of Mr. Jones' death the title to the real estate of "The New York Times" was vested in its president for the benefit of the association, and this situation was not changed by that event.

It is not possible that the real estate of "The New York Times" could, after Mr. Jones' death, remain as theretofore, the property of the association and used for its business purposes and still be regarded, so far as testator's interest was concerned, real estate passing to his children. It was neither so in fact nor in law.

The question to be determined at this time is not whether joint stock associations are corporations in the full meaning of the latter word, but rather what is the nature of the shares of

stock that joint stock associations are permitted to issue and sell in the open market.

The contention of the respondent and of the prevailing opinion below is that "The New York Times" being a joint stock association was a partnership both with reference to its shareholders and in its relations with third parties.

At this late day, and having regard to the remarkable development of joint stock associations both in England and this country, it is not possible to strictly apply the law of partnership to the manner in which they are to hold and dispose of real estate. The fact that the associates rest under the common-law liability of partners does not affect the question we are considering.

As to the nature of the shares of stock issued by a joint stock association, the same general principles of law are to be invoked that apply to a corporation.

This court in *Weaver* v. *Barden* (49 N. Y. 286) held that the capital stock of an incorporated company is personal property.

The Supreme Court of Rhode Island in *Arnold* v. *Ruggles* (1 R. I. 165, 167, 168), in considering the nature of a share of stock, said : " Is a share, then, thus made up, to be deemed real estate, or as necessarily partaking of the realty ? A share must pass one way or the other, as an entire thing. It cannot be resolved into the elements, of which the assets of the corporation consist, and a part pass to the heir and a part to the executor without destroying it and with it the whole concern. It is an entirety and must be either real or personal. And which is it ? It will not do to make the property of the corporation a criterion, for the property of almost every corporation is more or less mixed. We must make the share itself, those rights which constitute its beneficial interest, the criterion. Its right then to receive a dividend of the whole concern, whether real or personal, is the interest by which it is to be judged."

This is a clear and satisfactory statement of the attributes of a share of stock.

It would be incongruous and impossible, in conducting the affairs of a joint stock association, in view of the fact that it is allowed to issue stock, to hold, as the respondent contends, that notwithstanding the articles of association provide that neither the death nor the transfer of the interests of any shareholder shall work a dissolution of the association, or any interruption of its business, that, nevertheless, on the death of an associate his interest in the real estate of the association must be deemed to descend to his heirs at law and his interest in the personalty to pass under the Statute of Distribution.

The distinction between the property of a corporation represented by its capital stock and the property of the stockholders represented by their shares is discussed by the Supreme Court of the United States in a recent case. (*Cleveland Trust Co.* v. *Lander*, 184 U. S. 111.) The plaintiff in error, the Cleveland Trust Company, had a capital stock of five hundred thousand dollars, divided into five thousand shares of a hundred dollars each, all of which were paid up and the certificates were owned by a large number of persons in Ohio and elsewhere. The plaintiff was the owner of one hundred and seventy-four bonds of the United States of the denomination of a thousand dollars each, valued at the sum of $213,274.81, and claimed in its return in a tax proceeding the right to deduct the bonds from the par value of its stock. The Supreme Court of the state of Ohio sustained the decision of the Court of Common Pleas overruling this claim of the plaintiff, and an appeal was taken to the Supreme Court of the United States.

Mr. Justice McKENNA, in delivering the opinion of the court, said : " The plaintiff concedes the distinction between the property of the corporation, represented by its capital stock, and the property of the stockholders, represented by their shares, and bases an argument upon that distinction, and yet excludes from consideration as immaterial to the question at issue the laws of Congress governing the taxation of the shares. * * * In other words, the contention is that the tax on the shares being equivalent to the tax on the property

of the trust company there must be deducted from the value of the shares that portion of the capital of the company invested in the United States bonds. The answer to the contention is obvious and may be brief. The contention destroys the separate individuality recognized as we have seen by this court of the trust company and its shareholders, and seeks to nullify one provision of the Revised Statutes of the United States (§ 5219) by another (§ 3701), between which there is no want of harmony. And what the Constitution of the State of Ohio requires and what the statutes of the State require as to taxation must be left to be decided by the Supreme Court of the State, and whether that court has decided logically or illogically that a tax authorized by the laws of the United States on the shares of the company satisfies the Constitution of the State as a tax on the corporation is not open to our review or objection. The manner of taxation being regulated under the statutes of the United States, its effect cannot be complained of in the Federal tribunals. We do not mean to be understood as implying that the plaintiff's view of the Constitution of the State or of the laws of the State is correct. The inquiry is not necessary. Accepting such view as correct, plaintiff shows no right under the Constitution or the laws of the United States which has been violated."

The principle that the stock of a joint stock association is similar in its nature to that of a corporation has been recognized in a number of cases. (*Waterbury* v. *Merchants' Union Express Co.,* 50 Barb. 157, 161; *Rice* v. *Rockefeller,* 134 N. Y. 174, 187; *People ex rel. Platt* v. *Wemple,* 117 N. Y. 146, 149.)

As to the nature of the stock of corporations it has been frequently held that not only is stock personal property, but that it is so no matter what the character of the corporate property may be. (*Kent* v. *Quick Silver Mining Co.,* 78 N. Y. 179; *Weaver* v. *Barden,* 49 N. Y. 286; *Jermain* v. *Lake Shore & M. S. Ry. Co.,* 91 N. Y. 492; *Bradley* v. *Holdsworth,* 3 M. & W. 422; Cook on Stockholders, § 12.)

In *Matter of Bronson* (150 N. Y. at page 8) this court

held that shares of stock actually represented undivided interests in a corporate enterprise; the corporation holding the legal title for the benefit of stockholders.

The Statutory Construction Law (Laws of 1892, chap. 677, § 4), in defining personal property, says: "The term 'personal property' includes chattels, money, things in action, and all written instruments themselves, as distinguished from the rights or interests to which they relate, by which any right, interest, lien or incumbrance in, to or upon property, or any debt or financial obligation is created, acknowledged, evidenced, transferred, discharged or defeated, wholly or in part, and everything, except real property, which may be the subject of ownership."

This very exhaustive definition covers certificates of stock.

The Code of Civil Procedure (§ 647) provides, in substance, that the rights or shares which a defendant has in the stock of an association or corporation, together with the interests and profits thereon, may be levied upon by attachment, thus recognizing that the stock of an association, as well as that of a corporation, is deemed personal property.

The question we are now considering does not seem to have been directly passed upon by this court, but has been in other jurisdictions.

In England the case of *Myers* v. *Perigal* (21 L. J. C. L. Court of Common Pleas, 217) holds that the bequest of the proceeds of shares in a joint stock banking company did not come within the "Statute of Mortmain." (4 Geo. II, chap. 36; 9 Geo. II, chap. 36.)

In Pennsylvania we are cited by the appellants to the following cases, the first of which involved the law of joint stock associations, and the other of limited partnership, which closely resembles joint stock associations. (*In re Oliver Estate*, Pennsylvania Supreme Court, 9 L. R. A. 421; *Re Small Estate*, 151 Penn. St. 1.)

We are of opinion, on principle and authority, that the shares of a joint stock association should be treated as personal property and taxable as such. The difference between a

corporation and a joint stock association, in view of the many corporate powers bestowed upon the latter, is more in degree than kind.

The policy of the legislature in creating corporations is to continue to a certain extent the common-law liability of partners or joint debtors under which the stockholders would rest if unincorporated and engaged in a joint venture or partnership. This liability is primary and not statutory, and rests upon the directors and stockholders alike. The legislature says in effect to all the members of the corporation you shall enjoy certain corporate powers, but as to creditors you remain liable as partners at common law, subject to such limitations as we have placed upon that liability.

In *Corning* v. *McCullough* (1 N. Y. 47) it was held that where the charter of an incorporated company provides that the stockholders shall be liable for the debts, and that the creditor may, after judgment obtained against the corporation and execution returned unsatisfied, sue any stockholders and recover his demands, such stockholders are liable in an original and primary sense, like partners or members of an unincorporated association, and their liability is not created by the statute of incorporation. In other words, the directors and stockholders of a corporation rest under a modified common-law liability, while the associates in a joint stock association rest under the full common-law liability.

Assuming that the shares of "The New York Times" are personal property and taxable as such under the Transfer Act existing at the time Mr. Jones died, the remaining question is whether the appraiser was authorized to consider the value of the real estate in ascertaining the value of the shares. It is clear from the figures resulting from the appraisal that the real estate constituted the greater part of the assets of the association. These shares were not listed upon the Stock Exchange, or sold in the open market, and the only way to get at their value was to ascertain the property they represented. (*People ex rel. Union T. Co.* v. *Coleman*, 126 N. Y. 433.)

The order appealed from should be reversed, and the order of the surrogate affirmed, with costs to the appellants in all the courts.

PARKER, Ch. J., O'BRIEN, HAIGHT, MARTIN, VANN and CULLEN, JJ., concur.

Order reversed, etc.