"Stock" in a corporation is a right which a shareholder has by reason of his ownership of stock, and is a right to participate according to the amount of his stock in the surplus profits of the corporation on a division, and ultimately, on its dissolution, in the assets remaining after payment of debts, and this right is personal property.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 165–171; Dec. Dig. § 65.*

For other definitions, see Words and Phrases, vol. 7, pp. 6660–6664; vol. 8, p. 7804.]

Appeal from Surrogate's Court, Kings County.

In the matter of the judicial settlement of the account of James W. Osborne, as executor and trustee of the will of Eugene La Grove, deceased. From part of an order of the Surrogate's Court confirming the report of a referee, and from a part of a decree of the court, the executor and trustee appeals. Affirmed.

Argued before HIRSCHBERG, THOMAS, CARR, WOODWARD, and RICH, JJ.

Gilbert D. Lamb, of New York City, for appellant.
Jerry A. Wernberg, of Brooklyn, for respondent.

WOODWARD, J. The question here is whether certain corporate stocks belong to the life tenant or to the remaindermen, under the following clause of the will of Eugene La Grove, deceased:

"Fourth. All the rest, residue and remainder of my property and estate, real, personal and mixed of every description and wheresoever situated, of which I may die seised or possessed or to which I may be entitled at the time of my decease, including all lapsed legacies and any part of my estate which may not have been effectually devised or bequeathed, I give, devise and

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

bequeath to my executor and trustee hereinafter named in trust, to hold said property and estate and invest and reinvest the same and to collect the rents, issues, income and profits therefrom, and to pay the net rents, issues, income, and profits therefrom, quarterly to my wife, Ivy Lee La Grove from the time of my death during the term of her natural life, and, upon her death, to divide the principal into as many shares as my wife shall leave children by our marriage her surviving, and to hold one of such shares to the use of each such child during the time of the natural life of the youngest of such children of our marriage who may be living at the time of my death, appropriating so much of the income thereof as such trustee may deem desirable, to the support and maintenance and education of the several children respectively, and accumulating any surplus for his or her benefit during his or her minority, if this trust shall so long exist, and on his or her arriving at majority to pay all accumulations of income to such child.  On the death of the youngest child of our marriage who shall then be living at the time of my death, the principal of such funds shall be paid over to the child for whose use the same shall be held respectively, but in the event that my said wife shall die leaving no issue her surviving, then at her death, the principal so set apart for her benefit, shall be paid to such person or persons as would be entitled to share in her estate were she to die intestate under the statute of distribution in force at the time of her death in the state of New York."

The testator died October 4, 1908, without issue, and the owner of 3,000 shares of stock in the Singer Manufacturing Company, a corporation under the laws of the state of New Jersey.

The fifth clause of the will requests that none of this stock be sold, unless the remainder of his property should be insufficient to pay debts, etc., or the executor should elect to sell it and invest the proceeds in other specified security.  The executor sold 80 shares March 31, 1910, and 50 February 1, 1912, in the course of administering the estate, thus leaving 2,870 shares of the original stock in his hands. On June 2, 1910, the company adopted the following resolution:

"Whereas, this corporation now has a capital stock of thirty millions of dollars issued and outstanding, and a surplus of thirty millions of dollars and upwards; and whereas, it is desirable that said surplus, to the extent of at least thirty millions of dollars, should be retained by the corporation as working capital, and to that end that its capital stock should be increased to sixty millions of dollars, and a stock dividend of thirty millions of dollars be declared out of such increase, therefore be it resolved:

"First. That it is advisable to increase the capital stock of this corporation to sixty millions of dollars; and

"Second. That it is advisable to declare and pay to the stockholders of the corporation a stock dividend of thirty millions of dollars out of such increase of stock.

"And the board does hereby call a special meeting of the stockholders, to be held at the company's office, at the Singer Building, in the city of Elizabeth, on the 16th day of June, A. D. 1910, at 3 o'clock in the afternoon, to take action upon the above resolution and decide whether or not such increase of stock shall be made."   .

This was followed by other resolutions of the directors and stockholders, to the end that on June 17, 1910, the company issued to the executor 2,920 additional shares of its stock.  This is the stock in dispute; the question being whether it represents income on the original stock, and therefore belongs to the life tenant, or whether it is principal or corpus of the trust estate, and therefore belongs to the remaindermen, whoever they may be.

This surplus of the company arose alone from the earnings or prof-

its of its business—$37,604,206 *before,* and the remaining $13,956,-551 *after,* the death of the testator. It may be noted that, in the meantime, between his death, October 4, 1908, and the date of the decree appealed from, May 3, 1912, the executor had received from the company and paid to the life tenant cash dividends, amounting to $242,564.18, on the original stock. That stock was valued at $360 a share at the time of the testator's decease, and the 2,920 shares in dispute at $290 a share as of February 20, 1912, the date of taking the testimony.

[1] This controversy arose on an accounting by the executor in the Surrogate's Court, County of Kings. There is no dispute as to the facts. The referee in the case reported, as matter of law, and the surrogate confirmed the report, that the disputed stock represents income and belongs to the life·tenant.

If this were an open question, I should be inclined to hold that the interest of the testator in so much of the surplus earnings as had accrued up to the time of his death constitutes, as between the life tenant and the remaindermen, not income or profits, but a part of the principal or trust estate itself, that a corresponding interest in the surplus earnings which thereafter accrued is income or profits, and that the 2,920 shares, issued upon the combined surplus, represent both principal and income, and, after payment of the expenses of administration, should be apportioned between these two classes of claimants. This would seem to be a fair and equitable disposition of the matter upon principle.

It is apparent that the residue of the testator's property, and therefore the trust estate, consists principally, if not altogether, of the remaining 2,970 of the 3,000 shares of stock belonging to him at his decease. Using the word "estate" as comprising personal property, he created, we may say, by his will a new estate of this stock, and divided it into two parts, namely, *income* from that estate, to be paid to one person during her life, from the time of his death, and *remainder,* to be paid to other persons. These two, income and remainder, constitute the trust estate.

What part is remainder, principal, or corpus, and what part income therefrom, or the line dividing these two parts, is the matter in dispute. It is certain that the former, or corpus of the trust estate, consists of all the rest, residue, and remainder, after payment of debts, etc., of the testator's property and estate, real, personal, and mixed, of which he died possessed or to which he was entitled at the time of his decease, for the will expressly says so, and that the other part consists of the income from that property, for the will so provides as to this also:

[2] This stock, as already stated, constitutes the residuary estate, and therefore the trust estate. Such stock is defined as a—

"right which a shareholder in a corporation has by reason of his ownership of shares, is a right to participate according to the amount of his stock in the surplus profits of the corporation on a division, and ultimately, on its dissolution, in the assets remaining after payment of its debts." Plimpton v. Bigelow, 93 N. Y. 592, 599.

In other words, the specific residuary property and estate of which the testator was possessed, and to which he was entitled at the time of his decease, was this incorporeal, intangible thing called a *right;* nevertheless, personal property (Matter of Jones, 172 N. Y. 575, 582, 65 N. E. 570, 60 L. R. A. 476), of which there is no dispute. And it was this right of participation in these two classes of assets of the corporation that the testator created the corpus of the trust estate, as distinguished from income therefrom.

The testator had only one such right, and it had but one source— his ownership of the same stock. The right was as clearly, directly, and immediately attached to, and composed in part of, the testator's interest in the surplus profits of the corporation, existing at the time of his death, as in its ultimate assets, if any, on a future dissolution. The value of this right, and therefore of the residuary estate, was due in a large measure to this enormous surplus of over $37,000,000 in actual existence at the time of the testator's decease and the creation of the trust estate.

Of these matters there can be, as it seems to me, no dispute. And the perplexing question is how this right can be so divided as to make the right of participation in the surplus income from the right of participation in the other assets, or why the one is to be treated as income, and the other as corpus, of the trust estate. It is not because there had been no division of the surplus at the time of his death, for the same is equally true of the other assets.

Looking at the matter from another point of view: *Income* is something, gain or profit, which proceeds *from* labor, business, property, or capital. And it is so treated by the testator himself; for, having created the trust estate, he expressly provided, by his will, that the income *"therefrom"* should be paid to his widow, "from the time of" his death, during her life.

There was no trust, or trust estate, until his death, and no income *therefrom* until after that time. The so-called income (or the testator's right or interest in the surplus at the time of his death, and from which, in part, the disputed stock issued) had already accrued, not from the trust estate, but before its creation, and on a precedent estate, investment, or capital. That income, if income at all, did not and could not accrue upon or proceed *from* the trust estate, any more than an effect may precede its cause.

No doubt the right of the testator in this surplus was, or would have been when distributed, income as to him, upon his investment. But it was also a part of his personal property and residuary estate. And when he created this new or trust estate of that right, and gave it to other persons, that which was, or might have been, income as to him became principal or corpus as to them.

Besides, it is not apparent how the 2,920 shares of new stock in dispute is to be regarded as income, in any sense, from anything, or to anybody. The idea of income in such case is payment or distribution of something of value by the company, and gain or profit therefrom by the stockholders; but nothing of the kind took place. The company merely doubled its nominal capital, resolved to retain the surplus

earnings on hand, and issued to each stockholder as many additional shares as he then held. The surplus already belonged to the company. It received nothing in addition to what it then had, and parted with nothing.

Neither did the stockholder gain anything. He was no better off after than before the new issue. The number of his shares was increased, it is true, but not their value. The intrinsic value of his two shares was no greater after than that of one share before this transaction. Where, then, was his gain, profit, or income? This executor, then holding 2,920 shares in trust, received another block of a like number; but the 5,840 shares were worth no more than the original 2,920.

Again, it is not the nature or effect of income or profit to take from or lessen the principal or capital on which it accrues. The original stock of this company derived its entire value from the assets of the company, including this over $51,000,000 of surplus earnings; and when the company merely doubled the amount of stock on the same assets, it halved the value of the stock. The new stock was not profit or income from the old, but the half of its body or substance.

Likewise, the 2,920 shares in the hand of this executor, at the time of the new issue, derived their entire value from a corresponding share of the assets of the company; and the 2,920 additional shares issued to him derived their entire value solely from the same share of assets, and therefore from the value of the original shares. This does not partake, in any sense, of the nature or effect of income upon the original stock. On the contrary, the apparent effect of treating that portion of the new stock which issued on account of the surplus, in existence at the time of the testator's decease, as income, is to transfer so much of the corpus or remainder of the trust estate itself to the life tenant.

However, I see no substantial difference between this and the cases decided in McLouth v. Hunt, 154 N. Y. 179, 48 N. E. 548, 39 L. R. A. 230, Lowry v. Farmers' Loan & Trust Co., 172 N. Y. 137, 64 N. E. 796, and Robertson v. De Brulatour, 188 N. Y. 301, 80 N. E. 938. The rule established by those decisions is regarded conclusive of this one, and that the 2,920 shares of stock in question here are to be treated as income from the trust estate, to which the life tenant is entitled, subject to the payment of commissions, as specified in the decree appealed from.

The order and decree, in so far as appealed from, should be affirmed, with costs to respondent payable out of the trust estate. All concur.