### BOURN v. McLAUGHLIN.

District Court, N. D. California, S. D. April 9, 1927.

#### No. 17383.

1. **Internal revenue ⬅7(11)—Gain from conveyance of property for stock of family corporation, which had no market value, held not taxable "income," within revenue acts (Revenue Act 1916, § 2 [a], as amended by Revenue Act 1917, § 1200 [Comp. St. § 6336b]; Revenue Act 1918, § 202 [b], being Comp. St. § 6336⅛bb; Revenue Act 1921, § 202 [Comp. St. § 6336⅛bb]; Revenue Act 1924, § 202 [c], being Comp. St. § 6336⅛b; Revenue Act 1926, § 203 [d]).**

Where stock of family corporation received in return for conveyance of property had no market, and hence no market value, the gain arising out of such transfer was not "income" taxable under Revenue Act 1916, § 2 (a), as amended by Revenue Act 1917, § 1200 (Comp. St. § 6336b); Revenue Act 1918, § 202 (b), being Comp. St. § 6336⅛bb; Revenue Act 1921, § 202 (Comp. St. § 6336⅛bb); Revenue Act 1924, § 202 (c), being Comp. St. § 6336⅛b; Revenue Act 1926, § 203 (d), being 44 Stat. 13.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Income.]

2. **Internal revenue ⬅7(11)—Gains are not taxable, unless they fall within definition of "income."**

Gains in course of dealings in property are not taxable, unless they fall within the definition of income, which is the gain derived from capital, from labor, or from both combined, including profit from sale or conversion of capital assets.

At Law. Action by William B. Bourn against John P. McLaughlin. Judgment for plaintiff.

McCutchen, Olney, Mannon & Greene, of San Francisco, Cal., for plaintiff.

George J. Hatfield, U. S. Atty., and L. E. Kilkenny, Asst. U. S. Atty., both of San Francisco, Cal., for defendant.

KERRIGAN, District Judge. This is an action to recover $185,176.60, which was paid on an additional assessment of income tax for the year 1917. In December, 1917, plaintiff received 6,000 shares of the Filoli Estate, Inc., a family corporation, in return for the transfer to it of various properties determined by the Commissioner of Internal Revenue to have cost him, or had a value on March 1, 1913, of $609,719.08. At the same time, 28,500 shares of the Filoli Estate, Inc., were issued to the plaintiff's wife, upon her transferring to the corporation properties, chiefly stock of the Empire Mines & Investment Company, worth approximately $4,300,000. Plaintiff and his wife were the sole stockholders in this corporation, except the qualifying directors. On the basis of the determination by the Commissioner, the property transferred by plaintiff to the corporation was about 10 per cent. of the total property possessed by it, while the property transferred to it by plaintiff's wife comprised 90 per cent.

The Commissioner of Internal Revenue determined that, at the time of the transaction, the Filoli shares received by plaintiff were then worth $985,027.83. This valuation was made by appraisal, the revenue agents stating: "The value of the stock of the Filoli Estate received in exchange has also been determined by adjusting the values of the assets paid in for the stock, there being no other method of ascertaining the value of the said stock." On the basis of this determination plaintiff was required to pay an additional assessment of income tax for the year 1917, on the difference between $985,027.83 and $609,719.08, namely, $375,308.75; the tax being $185,176.60. Plaintiff now seeks to recover this sum.

By agreement of counsel, with the approval of the court, the evidence now before

the court was confined to one issue, the question as to whether plaintiff's Filoli stock, a minority interest in a family holding corporation, had market value in any real sense— whether it could be sold or exchanged upon any fair basis. This evidence completely sustains plaintiff's contention that his minority interest in the Filoli Estate, Inc., had no market, and hence no market value, at the time the stock was issued to him. It could not have been disposed of, except at such a sacrifice as to amount to a virtual donation. [1] The question, then, is as to whether there is any taxable income realized upon an exchange of properties, when the property received has no market, and hence no market value, and is in no sense cash or its equivalent. Defendant contends that there has been an accretion in intrinsic value of plaintiff's property as the result of the exchange. The determination by the Commissioner, which must be accepted as true at the present stage in this case, indicates this fact. Defendant further contends that, in the absence of open market sales, the amount of this increase in value may be determined by appraisal for the purposes of income tax assessment.

The statute applicable to the present case is section 2 (a) of the Revenue Act of 1916, as amended by the Act of 1917, § 1200 (Comp. St. § 6336b) which reads as follows:

"Sec. 2. (a) That, subject only to such exemptions and deductions as are hereinafter allowed, the net income of a taxable person shall include gains, profits, and income derived from salaries, wages, or compensation for personal service of whatever kind and in whatever form paid, or from professions, vocations, businesses, trade, commerce, or sales, or *dealings in property, whether real or personal, growing out of the ownership or use of or interest in real or personal property;* also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever."

The acts of 1916 and 1917 contain no specific provision as to the method of determining income where property is exchanged for other property. The Revenue Act of 1918 provides in part (section 202 [b]):

"(b) When property is exchanged for other property, the property received in exchange shall for the purpose of determining gain or loss be treated as the equivalent of cash to the amount of its fair market value, if any;" Comp. St. § 6336⅛bb.

The later acts also provide in some man-

ner that taxable income arises out of an exchange of properties only when the property received has a realizable market value. Revenue Act 1921, § 202 (Comp. St. § 6336⅛bb); Revenue Act 1924, § 202 (c), being Comp. St. § 6336⅛b; Revenue Act 1926, § 203 (d), being 44 Stat. 13. Under these statutes it is conceded that plaintiff could not be required to pay income tax, the property received by him being without market value.

The problem now before me therefore narrows down to the question as to whether these later statutes express a new principle, or whether they are merely an explicit statement of a principle inherent in the idea of "income," and therefore included in the more general terms of the acts of 1916 and 1917. In other words, is it essential that property have an exchangeable value, in order that it may be considered to be income and taxable? Has there been a "dealing in property," by which a gain, profit or income was realized, when, on an exchange, the property received is without market value?

The Supreme Court, in deciding that stock dividends were not taxable as income, in Eisner v. Macomber, 252 U. S. 189, 207, 40 S. Ct. 189, 193, 64 L. Ed. 521, 9 A. L. R. 1570, discusses the meaning of the word "income" in the following language:

"After examining dictionaries in common use (Bouv. L. D.; Standard Dict.; Webster's Internat. Dict.; Century Dict.), we find little to add to the succinct definition adopted in two cases arising under the Corporation Tax Act of 1909 [36 Stat. 112] (Stratton's Independence v. Howbert, 231 U. S. 399, 415 [34 S. Ct. 136, 58 L. Ed. 285]; Doyle v. Mitchell Bros. Co., 247 U. S. 179, 185 [38 S. Ct. 467, 62 L. Ed. 1054]). 'Income may be defined as the gain derived from capital, from labor, or from both combined,' provided it be understood to include profit gained through a sale or conversion of capital assets, to which it was applied in the Doyle Case (pages 183, 185). Brief as it is, it indicates the characteristic and distinguishing attribute of income essential for a correct solution of the present controversy. The government, although basing its argument upon the definition as quoted, placed chief emphasis upon the word 'gain,' which was extended to include a variety of meanings; while the significance of the next three words was either overlooked or misconceived. 'Derived from capital;' 'the gain derived from capital,' etc. Here we have the essential matter; not a gain accruing to capital, not a growth or increment of value in the

investment; but a gain, a profit, something of exchangeable value proceeding from the property, severed from the capital, however invested or employed, and coming in, being 'derived'—that is, received or drawn—by the recipient (the taxpayer) for his separate use, benefit, and disposal; that is, income derived from property. Nothing else answers the description."

[2] Gains arising out of dealings in property are not taxable, unless they fall within the above definition of income. This is true, whether the statute under which the tax is levied is that of 1916 or 1926. The explicit recognition of the principle that income is not realized, unless it is received in a form which has an equivalent in cash, a realizable market value, found in the 1918 and subsequent statutes, is not a restriction of the incidence of the income tax. It is merely an express statement of a principle inherent in the nature of income as recognized in Eisner v. Macomber, supra, in the statement that income must be "a gain, a profit, something of exchangeable value, proceeding from the property." It also appears in an earlier case, U. S. v. Smith, 27 Fed. Cas. 1175, No. 16,341, a prosecution for swearing falsely to an income tax return. In that case the situation in the present case was reversed; Smith having exchanged certain stocks for some property. He returned no statement of profit on the transaction. The opinion reported is on defendant's motion for a new trial. The court specifically approves an instruction to the jury to the following effect:

"II. That the jury were first to inquire whether the affidavit of March 22, 1869, was false or not in the particular alleged; that is, had the defendant derived any gains or profits from the sale of stocks in 1868, which were taxable as income. That a mere exchange of property, as of the Wallamet Woolen Manufacturing Company stock for land or other property, was not a sale of stocks, from which profits were derived, to be returned for taxation as income; because, although it might appear that one party or the other had gained by the exchange, that is, got property of greater value than what he gave cost him, yet this apparent gain might turn out otherwise, and is not realized until the property obtained is converted into cash or its equivalent." Page 1182.

In Safe Deposit & Trust Co. v. Miles (D. C.) 273 F. 822, affirmed 259 U. S. 247, 42 S. Ct. 483, 66 L. Ed. 923, arising under the 1916 statute, the court says: "Nevertheless, by and large, the statute means what it says, and that is that the tax is to be levied on nothing else except gains, profits, and income, and upon them only when actually realized in money or in money's worth, * * *." Page 824.

According to these cases it appears that it is essential that property received in exchange for other property have an exchangeable value, in order to subject any apparent gain to income tax. On the evidence before the court this tax was illegally assessed. The Filoli stock received by plaintiff, representing a minority interest in a family corporation, was without a market. It could not be disposed of at any sum which corresponded to its real value. The revenue agents who computed the tax were themselves forced to fix a value for the stock by appraisal of the physical assets of the corporation. The fact that such an appraisal was made, that a value could be determined, is not enough, however, to give this property "exchangeable value."

Cases involving inheritance tax questions and questions of valuations of property as of an earlier date made to fix the amount of the profit, cited by defendant, are not in point here. Estate of Felton, 176 Cal. 663, 169 P. 392; In re Jones' Estate, 172 N. Y. 575, 65 N. E. 570, 60 L. R. A. 476; In re Dupignac's Estate, 123 Misc. Rep. 21, 204 N. Y. S. 273; Tax Com. v. Clark, 20 Ohio App. 166, 151 N. E. 780; Walter v. Duffy (C. C. A.) 287 F. 41; Phillips v. U. S. (D. C.) 12 F.(2d) 598; Merchants' L. & T. Co. v. Smietanka, 255 U. S. 509, 41 S. Ct. 386, 65 L. Ed. 751, 15 A. L. R. 1305. In all of these cases there was no question resembling that in the present case.

The present case is one where there is not only no market value for the stock concerned fixed by sales, but one where there is no market at all, as shown by attempts made to sell some of the stock. The only realization of profit which can be made is by liquidation of the entire corporation, or sale of all of its shares, or change of its character from a family to a larger corporation, with a wide distribution of shares, involving transfer of plaintiff's holdings, or by the enforced and artificial realization which would occur upon plaintiff's death, at which times the appraisal now suggested as proper would have its place. Any apparent gain which plaintiff has made by this exchange remains on a parity with increases in capital investment which are not assessable as income until realization occurs.

Let judgment be entered for the plaintiff. So ordered.