MARY A. B. duPONT LAIRD, WALTER J. LAIRD AND PHILIP D. LAIRD, EXECUTORS OF THE ESTATE OF WILLIAM WINDER LAIRD, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 51654. Promulgated October 31, 1933.

*Frank S. Bright, Esq.*, *Robert H. Richards, Esq.*, and *Aaron Finger, Esq.*, for the petitioners.

*Frank T. Horner, Esq.*, for the respondent.

OPINION.

SMITH: The first question presented by this proceeding is the correctness of the action of the respondent in including in the gross estate of the decedent the value of a trust fund held by the Wilmington Trust Co. This trust fund was created by an agreement

between the decedent and the Wilmington Trust Co. dated December 27, 1923. Pursuant to this agreement, the decedent transferred to the trust company certain life insurance policies taken out by him upon his life (designated as the Primary Trust Fund), and shares of corporate stock (designated as the Secondary Trust Fund), the net income from the secondary fund to be used to pay premiums on the life insurance, and upon the further trust, after December 27, 1933, or the prior death of the trustor, to pay over the income and/or trust corpus to trustor's wife and/or children or issue of children then living. The trustor reserved the right to change the beneficiaries of the trust. It is by virtue of this reservation made in the trust instrument that the respondent has included the value of the trust fund in the gross estate. No question is raised as to the value of the trust fund as of the date of death of the decedent. The respondent has included this fund in the gross estate by virtue of section 302 of the Revenue Act of 1926, which, so far as material, is as follows:

SEC. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

(a) To the extent of the interest therein of the decedent at the time of his death;

\*          \*          \*          \*          \*          \*          \*

(d) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, or where the decedent relinquished any such power in contemplation of his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth. \* \* \*

\*          \*          \*          \*          \*          \*          \*

(h) Except as otherwise specifically provided therein subdivisions (b), (c), (d), (e), (f), and (g) of this section shall apply to the transfers, trusts, estates, interests, rights, powers, and relinquishment of powers as severally enumerated and described therein, whether made, created, arising, existing, exercised, or relinquished before or after the enactment of this Act.

In *Saltonstall* v. *Saltonstall*, 276 U.S. 260, the Supreme Court stated:

So long as the privilege of succession has not been fully exercised it may be reached by the tax. \* \* \* And in determining whether it has been so exercised technical distinctions between vested remainders and other interests are of little avail, for the shifting of the economic benefits and burdens of property, which is the subject of a succession tax, may even in the case of a vested remainder be restricted or suspended by other legal devices. \* \* \* The beneficiary's acquisition of the property is equally incomplete whether the power be reserved to the donor or another. \* \* \*

To the same effect, see *Chase Natl. Bank* v. *United States*, 278 U.S. 327; *Reinecke* v. *Northern Trust Co.*, 278 U.S. 339; *Porter* v. *Commissioner*, 288 U.S. 436. On brief, the petitioners state that they are "not able successfully to argue that it [*Porter* v. *Commissioner*, *supra*] is not applicable to the first point in this case * * * so the first point need not further be considered." The action of the Commissioner in including the value of the trust fund in the gross estate is sustained upon the principles of law enunciated in the above cited decisions.

The remaining questions for the determination of the Board relate to the value of certain shares of stock of the Christiana Securities Co., Delaware Realty & Investment Co. and Glenden Land Co. owned by the decedent at date of death. These shares were returned by the petitioners for estate tax purposes at $800, $781.17122 and $340.21 per share, respectively. The respondent in the determination of the deficiency increased the values to $1,760.60 per share, $15,066.51 per share, and $397.31 per share, respectively. The stock of all of these companies was closely held by members of the duPont family. There have never been any sales establishing the market value of them. In the absence of such sales the respondent valued the assets of each company, consisting principally of listed stocks, and divided the net worth of each company by the number of shares outstanding for the purpose of arriving at the value of each share. This is upon the principle that for inheritance tax purposes a determination can and must be made of the value of the shares of stock in a closely held corporation by reference to the value of the physical property of the corporation, its success, earnings, etc. *In re Felton's Estate*, 176 Cal. 663; 169 Pac. 392; *In re Jones' Estate*, 172 N.Y. 575; 65 N.E. 570; 60 L.R.A. 476; *In re Dupignac's Estate*, 123 Misc. Rep. 21; 204 N.Y.S. 273; *Tax Commission* v. *Clark*, 20 Ohio App. 166; 151 N.E. 780. Cf. also *Langstaff* v. *Lucas*, 13 Fed. (2d) 1022; *Marr* v. *United States*, 268 U.S. 536.

In valuing the shares of stock owned by these family corporations, the respondent used the median between the high and low points at which these shares of stock sold on the stock exchanges on the date of death of the decedent; viz., November 19, 1927. The petitioners contend that the closing prices of these shares on November 19, 1927, were, in practically all cases, less than the median which was used by the respondent and that the respondent erred in using the median price rather than the closing price. The Board knows of no valid reason for using the closing prices rather than the median prices. The record does not show the hour of death of the decedent, if that were material. The contention of the petitioners upon this point is not sustained.

The decedent, at the date of his death, owned 1,000 common shares of Christiana Securities Co. out of 150,000 shares outstanding. The principal assets of this company consisted of 840,000 shares of common stock of the duPont Co. and 70,571 shares of the common stock of the Atlas Powder Co. The respondent valued the duPont stock at $325.75 per share and the Atlas Powder Co. stock at $65.875 per share for the purpose of making his computation. The petitioners contend that this was in error for the reason that such a block of the duPont Co. stock and of the Atlas Powder Co. stock could not have been sold within any reasonable period after the date of death of the decedent at the quoted prices for these shares. The petitioners introduced the opinion evidence of competent brokers to the effect that an attempt to sell as much as 840,000 shares of the common stock of the duPont Co. in November 1927 would have forced the market price down to such an extent that probably the seller would have received on the average something between $100 and $200 per share and that no market could have been found for as much as 70,571 shares of the common stock of Atlas Powder Co. These witnesses were of opinion that from a syndicate a price of $25 per share might have been realized.

It is to be noted that our problem is not the determination of the fair market value of 840,000 shares of the common stock of the duPont Co. and 70,571 shares of the common stock of the Atlas Powder Co. Our problem is that of determining the value of 1,000 common shares of Christiana Securities Co. out of a total issue of 150,000 shares. Cf. *James Couzens*, 11 B.T.A. 1040.

Section 302 of the Revenue Act of 1926, quoted above, provides that there shall be included in the gross estate the " value " at the time of the decedent's death of all property, real or personal, tangible or intangible, wherever situated. Upon this point the Commissioner has prescribed article 13 of Regulations 70 (1926 edition), which, so far as material, is as follows:

ART. 13. **Valuations.**—(1) *General.*—The value of all property includable in the gross estate is the fair market value thereof at the time of the decedent's death. The fair market value is the price at which property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell. * * *

\* \* \* \* \* \* \*

(3) *Stocks and bonds.*—The value of stocks and bonds listed upon a stock exchange should be determined by taking the mean between the highest and lowest quoted selling prices upon the date of death * * *.

\* \* \* \* \* \* \*

Stock in a close corporation should be valued upon the basis of the company's net worth, earning and dividend-paying capacity, and all other factors having a bearing upon the value of the stock. Complete financial and other data upon which the estate bases its valuation should be submitted in duplicate with the return.

There is no question here of forcing on the market at the approximate death of the decedent the large block of duPont stock and Atlas Powder Co. stock held by the Christiana Securities Co. Those shares of stock were held as investments by the Christiana Securities Co. So far as anything appears in the record to the contrary, the market quotations for shares of duPont stock on November 19, 1927, represented the market value. The Christiana Securities Co. owned only 31.559 percent of the outstanding common stock of the duPont Co. There is no reason to assume that the quoted price did not represent the market price of the shares which were not held by the Christiana Securities Co. or that that value was an inflated value. It was testified that the lowest price at which duPont common stock sold on the stock exchange in November 1927 was $300.75 per share. The record does not show the prices at which this stock sold immediately after the death of the decedent or in 1928. Furthermore, the record does not show the earnings of the duPont Co. for any year. The same is true of the common stock of the Atlas Powder Co. The petitioners contend that the value used by the respondent in computing the value of the holdings of the Christiana Securities Co. in Atlas Powder Co. common stock of $65.875 per share was too high. But it appears that the Christiana Securities Co. sold its 70,571 shares of common stock of the Atlas Powder Co. at private sale on November 7, 1928, at $66.67 per share.

The respondent found the value of the 1,000 shares of Christiana Securities Co. common stock owned by the decedent at the date of death to be $1,760.60 per share. The Board must assume that the Commissioner's findings were correct, in the absence of proof on the part of the petitioners that such value was incorrect. *Avery* v. *Commissioner* (C.C.A., 5th Cir.), 22 Fed. (2d) 6; *Royal Packing Co.* v. *Commissioner* (C.C.A., 9th Cir.), 22 Fed. (2d) 536; *Greengard* v. *Commissioner* (C.C.A., 7th Cir.), 29 Fed. (2d) 502; *Botany Worsted Mills* v. *United States*, 278 U.S. 282, 290; *Wickwire* v. *Reinecke*, 275 U.S. 101, 105. We think that the petitioners have not sustained the burden imposed upon them of establishing the unsoundness of the Commissioner's determination. His determination is therefore approved.

The decedent owned 250 of the 8,000 shares of the Delaware Realty & Investment Co. stock. These shares were returned by the executors at a value of $781.17122 per share. The respondent determined the value at $15,066.51 per share. The difference between the executors' and the respondent's valuation (except as to $4.80 per share) results entirely from the fact that the executors did not consider or value, and the respondent did consider and value, certain securities, hereinafter called annuity securities, as part of the assets of the Delaware Realty & Investment Co. These securities represent the

original securities transferred to this company by Pierre S. duPont and Alice Belin duPont, his wife, pursuant to the annuity contract of May 31, 1924, shown in our findings as "Assets of Annuity Fund," and certain securities acquired by the company and carried in the "Annuity Reserve Fund." It is the contention of the petitioners (1) that these securities should not be treated as assets of the company in determining the value of the company's shares of stock; and (2) in the event such securities are regarded as assets of the company, the common shares of stock of the Christiana Securities Co. should not be valued at $1,760.60 per share, as has been done by the respondent, and the common stock of E. I. duPont de Nemours & Co., the common stock of the Hercules Powder Co., and the common stock of the Atlas Powder Co. should not be valued upon the basis at which such stock sold on the New York Stock Exchange at the date of the decedent's death, because of the large blocks of the stocks held by the company.

In support of their contention that the annuity securities, including both the assets of the annuity fund and of the annuity reserve fund, should not be included as an asset of the Delaware Realty & Investment Co. in valuing its stock, it is submitted that:

* * * it is clear from the annuity contract that it is intended thereby that the fund at any time represented by the said securities and property shall be liable for the payment of the annuity and that the annuity is an equitable charge on the whole of said fund, and every dollar's worth thereof, as it exists at every moment of time until the death of the survivor of the two annuitants;

that:

* * * The contract limits the right of Delaware Realty and Investment Company to use any income or earnings from the annuity securities to pay dividends to its stockholders or salaries to its employees or for any purpose other than making the annuity payments unless and until a reserve and guarantee fund shall have been accumulated amounting to 30% of a certain valuation therein fixed * * *;

and that " the effect of the contract was to charge and encumber the annuity securities with the contract." It is further submitted that " the fundamental error of the Commissioner consisted in treating this annuity contract as though it were an ordinary life insurance company annuity "; that " under any viewpoint, the Commissioner's determination of value necessarily contemplates that the annuity contract was redeemable." It is then contended that the annuity contract is not redeemable and that the annuity securities or the proceeds which may be received upon a conversion of them must be retained by the company for the purpose of carrying out the conditions of the annuity contract; hence, that the company may not distribute them to its stockholders.

Careful consideration has been given to the above and other arguments made by the petitioners for the exclusion from the assets of

the Delaware Realty & Investment Co. of the so-called annuity securities for the purpose of arriving at the value of 250 shares of its capital stock. We are of the opinion, however, that the arguments are largely beside the point. Our problem here is to determine the value for estate tax purposes of 250 shares of the stock of this company out of a total of 8,000 shares. The record does not show the earnings of the company or the earnings of companies whose stocks constituted its principal assets. The record does show, however, that this company paid 400 percent dividends upon its stock in 1927 and 795 percent upon its shares of stock in 1928. Whether these dividends exhausted its earnings is not shown by the record. The evidence appears to be clear that at the time the securities constituting substantially all of the assets of the annuity fund were received by the company on May 31, 1924, their value was $13,500,000. They were accepted as having that value. Under the respondent's method of valuation of these assets, that is, by valuing the shares of stock constituting the principal assets of the annuity fund and the annuity reserve fund, the value of these assets at the date of death of the decedent was $126,743,493.03. The annuity contract has attached thereto a—

Table, referred to in the foregoing indenture, of present values of the annuity thereby granted, based on American Annuitants' Select Mortality Tables (1920— males and females), and interest rate of approximately 4¾ per annum, birth of male annuitant January 15, 1870, and birth of female annuitant July 15, 1871.

The present value of the annuity as of May 29, 1924, is shown as $13,500,000. This value decreases in successive years. At December 31, 1927, the present value of the annuity was $12,631,428. The present value of the annuity at December 31, 1977, is placed at $450,000.

It is apparent that the market value of the securities constituting the assets of the annuity fund increased enormously from April 31, 1924, to the date of the death of the decedent. The earnings of the corporation were likewise greatly in excess of what the officers of the company estimated they would be in 1924; for it is stipulated that at that time the officers of the company were of the opinion that the company would have no earnings available for distribution to its stockholders for a period of at least 10 years. This was owing to the fact that a reserve of 30 percent of the present value of the annuity must be created out of earnings before dividends were paid upon the stock of the company. The date upon which the earnings had accumulated to this extent is not shown by the record, but it is shown that dividends were being paid upon the stock in 1927 and 1928, as above indicated. We cannot doubt that

this annuity contract possessed by the Delaware Realty & Investment Co. was of great value to it and that its value was one of the assets to be taken into consideration in the valuation of the stock on November 19, 1927. We think there is no merit in the petitioner's contention that the value of the annuity contract to the Delaware Realty & Investment Co. should not be taken into consideration in the valuation of its shares of stock. The annual payment of the $900,000 annuity to the decedent's widow was for an indefinite term. In any event, the payment of the annuity terminates upon the death of Alice Belin duPont and then the company possesses its assets free and clear of any claim by the annuitants.

In the valuation of the shares of stock of this company, the respondent used the same method as he used in the valuation of the shares of common stock of the Christiana Securities Co. set out above. He valued the shares of stock owned by the company at the prices at which the shares sold on the date of the death of decedent. It was not possible, however, so to value the common shares of the Christiana Securities Co. and the 400 shares of Longwood, Inc. The principal assets of these companies, however, consisted of listed stocks and bonds, the values of which were easily ascertainable. The respondent used the quoted prices for such securities in the determination of the value of 49,000 common shares of the Christiana Securities Co. and 400 shares of Longwood, Inc. The petitioners make the same argument here as was made with respect to the valuation of the 1,000 common shares of Christiana Securities Co. owned outright by the decedent at the date of his death. For the reasons above stated, we are of the opinion that the evidence does not prove the unsoundness of the respondent's determination. Even though it may be true that the large blocks of stock carried in the annuity and annuity reserve funds could not readily be sold at the prices determined by the respondent, this does not prove that the value of 250 shares of the Delaware Realty & Investment Co. was any less than $15,066.51 per share, the amount determined by the respondent.

It should be noted, however, that in the determination of the value of this stock the respondent considered as a liability of the Delaware Realty & Investment Co. the present worth of an ordinary annuity of $900,000 per annum to two persons of the ages of Pierre S. duPont and his wife, Alice Belin duPont, and to the survivor, as of the date of death of William Winder Laird on November 19, 1927, at $12,-475,139.13. The stipulation is to the effect that on this date such present worth was $12,658,151. In any event, the value of each share of stock of the Delaware Realty & Investment Co. should be recomputed, giving effect to the increased liability shown by the stipulation.

Aside from the error above noted, the determination of the respondent of the value of 250 shares of stock of the Delaware Realty & Investment Co. is sustained.

The final question for determination is the value of 143 shares of the Glenden Land Co. This stock was returned at a value of $340.21 per share and increased by the respondent to $397.31. The only allegation of error upon this point made by the petitioners is that there were included in the assets of this company certain life insurance policies transferred by the decedent to this company at some time prior to his death. The company collected insurance on these policies in the amount of $1,039,288.37. The petitioners contend that no part of this amount should be included in the assets of the company.

The evidence does not show whether these policies had a surrender value. The contention is simply that they did not constitute an asset of the company which is to be taken into consideration in the determination of the value of the stock. We think that this contention is without merit. We can not doubt that they had some value to the company, even though they had no cash surrender value. In *Estate of W. A. Blair*, 4 B.T.A. 959, we said:

\* \* \* We can not as a matter of law say that the valuation of a share of stock must exclude such an asset [life insurance policy]. That the right of the beneficiary under a policy is an asset seems clear. *In re Reed's Estate*, 243 N.Y. 199; 153 N.E. 47. Whether at any given time it is worth its face or its surrender value or something between is a matter of fact requiring proof. \* \* \*

To the same effect is *Annie S. Kennedy et al., Executors*, 4 B.T.A. 330, wherein the Board held that the shares of stock of the Bulger Block Coal Co. were to be valued as of the date of the decedent's death and that insurance upon the decedent's life, payable to the company, was to be included in the company's assets at its value at the time of decedent's death, which was its face value. We there cited *In re Einstein's Estate*, 186 N.Y.S. 931; affd., 193 N.Y.S. 931.

For lack of proof that the value of the 143 shares of Glenden Land Co. was less than the amount determined by the respondent, the respondent's determination is sustained.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*