MARY A. B. DU PONT LAIRD, WALTER J. LAIRD AND PHILIP D. LAIRD, EXECUTORS OF THE ESTATE OF WILLIAM WINDER LAIRD, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 51654. Promulgated October 18, 1938.

*Aaron Finger, Esq., Percy W. Phillips, Esq.,* and *Laurence Graves, Esq.,* for the petitioners.

*Frank T. Horner, Esq.,* for the respondent.

## OPINION.

SMITH: It is the petitioners' contention under the mandate proceeding in this case that the value for estate tax purposes of the 1,000 common shares of Christiana Securities Co., and of the 250 shares of

Delaware Realty & Investment Co. on November 19, 1927, the date of the death of the decedent, was $758 per share and $6,046 per share, respectively. The respondent, on the other hand, contends that the value of the Christiana Co. shares at the date of the death of the decedent was $1,760.60 per share and of the Delaware Co. shares $15,043.66 per share, or the same amounts as originally determined. He contends that "upon the basis of the company's net worth, earning and dividend-paying capacity, and all other factors having a bearing upon the value of the stock", as required by article 13 (3) of Regulations 70, the values are as claimed by him; furthermore, that the evidence presented before the Board at the rehearing warrants such values.

The question before the Board is essentially one of fact. It is a difficult one to answer. There have never been any sales of the shares of stock of either of the corporations in question which would throw light upon the question. No case coming before the Board or the courts where the facts are comparable has been cited.

To prove their contentions the petitioners have presented the evidence of a number of witnesses, some of whom have made an extended study of the situation. As a result of their studies, two of the witnesses have expressed the opinion that the value of the Christiana Co. shares at the date of death was $975 per share and of the Delaware Co. shares $7,841 per share. The basis of their estimate of $975 per share for the Christiana Co. shares is that the average annual earnings for the three years 1925, 1926, and 1927, including the dividends and interest received by the Christiana Co. plus the undistributed earnings of underlying companies, were $108.33 per share. They have multiplied these average annual earnings by nine in order to obtain the value of $975 per share. In a similar manner they have valued the shares of the Delaware Co. by adding to average annual earnings received of $349.41 per share for the same three-year period (should be $362.33 per share) their estimate of the undistributed earnings of the underlying companies of $548.02 per share and multiplied the total by eight, which gave a value of $7,179 per share, to which sum was added $662.26 per share which was the value determined by the respondent for the shares of Longwood, Inc., owned by the Delaware Co. The result is a fair market value of the Delaware Co. shares of $7,841 per share. These witnesses were of the opinion that the earnings of the Delaware Co., including the undistributed earnings of the underlying companies, should be multiplied by eight rather than by nine, since it was conceivable that a part of the undistributed earnings of the underlying companies would never be received by the Delaware Co. by reason of the taxation of those earnings as they passed through the several corporations

to the treasury of the Delaware Co., and also by reason of the fact that the Delaware Co. had an undetermined liability in respect of that company's annuity contract which required the payment of an annuity of $900,000 for an undetermined period.

Another witness for the petitioners was of the opinion that the fair market value of the Christiana Co. shares on November 19, 1927, was $758 per share and of the Delaware Co. shares $6,046 per share. He was of the opinion that the other witnesses for the petitioners erred in multiplying the earnings of the Christiana Co. shares by nine and of the Delaware Co. by eight in obtaining their valuations. He reached his valuations by multiplying the average annual earnings for the three-year period 1925 to 1927, inclusive, of the Christiana Co. shares by seven and of the Delaware Co. shares by six.

The respondent, on the other hand, has presented the testimony of two valuation witnesses, one of whom was of the opinion that the value of the Christiana Co. shares on November 19, 1927, was $2,095 per share, based solely upon the earnings attributable to reasonably similar stocks, and after consideration of the fair market value previously determined on the basis of the net worth of the assets, which was $1,760.60 per share. He considered the asset basis of valuation as the most reliable measure of value and stated his opinion that $1,760.60 was the minimum fair market value of the Christiana Co. shares as at the date of death. Similarly, he valued the shares of stock of the Delaware Co. at $14,950 per share on the basis of its dividend-paying capacity, at $17,400 per share solely upon the basis of its earning capacity, and at $15,043.63 solely upon the basis of the net worth of the company's assets.

Another witness for the respondent valued the Christiana Co. shares at $2,000 per share and the Delaware Co. shares at $17,000 per share in a retail market, and at $1,840 per share for the Christiana shares and at $15,250 per share for the Delaware shares in a wholesale market, or one in which a banker would buy the shares for resale to the public. The Government witnesses were of the opinion that, since there was an active demand for investment trust shares as at the date of the death of the decedent, bankers would have been glad of an opportunity to purchase the shares of stock in question and to have issued certificates of beneficial interest against them for sale to the public after the manner in which fixed investment trusts were operating at that time.

After making a careful study of each company's net worth and earning and dividend-paying capacity, and after taking into account all other factors having a bearing on the value of the stock as required by article 13 (3) of Regulations 70, the Board has reached the conclusion that the fair market value of the Christiana Co. common

shares at the date of the death of the decedent was $1,000 per share, and of the Delaware Co. $8,500 per share. We shall not in this opinion attempt to set forth all of the factors which have led us to reach these valuations or the weight which we have given to each of the various factors. We have taken into account not only the factors which appear in our findings of fact, but many others brought out in the evidence. We deem it appropriate, however, to set forth some of the considerations which have led us to our conclusion.

We are of the opinion that the Government witnesses have given too much weight to the market quotations of the shares of stock owned by each of these companies in arriving at their determinations of value. The market quotations of the du Pont Co. common shares practically doubled in market price from January to November 19, 1927. The shares sold as low as $168 per share in January, and at more than double that price in October 1927. The median between the high and the low price at which the shares sold on November 19, 1927, was $325.75 per share. The respondent used this value in determining the fair market price on November 19, 1927, of 840,000 shares of the du Pont Co. stock in reaching his determination of a value of $1,760.60 per share for the Christiana Co. shares, as shown in the deficiency notice. If the decedent had died in January 1927, at a time when the du Pont Co. shares were selling at $168 per share, the value of the Christiana Co. shares determined upon the basis used by the respondent would be only approximately one-half of the value determined by him for the shares on November 19, 1927.

The earnings of both the Christiana Co. and the Delaware Co. were largely dependent upon the earnings of the General Motors Corporation. That corporation contributed between 60 and 70 percent of the earnings of the du Pont Co., which, in turn, was the principal source of the earnings of the Christiana Co. and of the Delaware Co. The earnings of the General Motors Corporation showed a large increase in 1926 and 1927 over the earnings of prior years. A large part of such increase was due to the fact that the Ford Motor Co., which had been the principal manufacturer of automobiles in the United States prior to 1927, was practically out of production in 1927. Beginning about 1924 or 1925, there was a demand on the part of the public for a faster automobile than the Ford Model T that was then being produced. That car was obsolescent in 1925 and 1926. The public was buying a better or higher-priced car than the Ford Model T. The Ford Motor Co., in 1926 or in 1927, saw the handwriting on the wall and decided to abandon the manufacture of the Ford Model T and to change over to the production of a faster and more up-to-date car. During this period of transition the General Motors Corporation enjoyed great prosperity. The evidence shows that whereas in 1925

nearly 2,000,000 Ford cars had been produced, the number produced in 1927 was only 454,601. The General Motors Corporation was the beneficiary of this decline in the production of the Ford Motor Co. The latter company had, however, an enormous plant. It was well recognized that it would be back in production within a short time with a car which might prove a formidable competitor with the cars produced and sold by the General Motors Corportion. The prospective earnings of the General Motors Corporation for a period of two or three years could be forecast as early as 1926. The Board is of the opinion that those earnings could be forecast in January 1927, as well as in November 1927.

A further fact to be taken into consideration is that, if the Christiana Co. had attempted in November 1927 to sell any large block of its holdings of the du Pont Co. shares, the probabilities are that it could not have realized anything like $325.75 per share for its total holdings of 840,000 shares—approximately one-third of the outstanding common shares of the du Pont Co. Some witnesses for the petitioners were of the opinion that if the Christiana Co. sold all of its 840,000 shares of du Pont Co. stock the market price would have declined to perhaps $125 per share. Even though the price might not have declined to that extent, the Board is satisfied that the company could not have realized anything like $325.75 per share for all of its holdings of du Pont Co. common stock.

It is further to be noted that if the Christiana Co. and the Delaware Co. had liquidated its holdings of du Pont Co. common stock, of Atlas Powder Co. stock, and of Hercules Powder Co. stock at approximately the quotation prices on November 19, 1927, the companies would have been subject to large income taxes upon the profits realized. Accordingly, a stockholder of the Christiana Co. or of the Delaware Co. could not have received in cash the full amount of the proceeds received by those companies from the sale of their investments.

Both the Christiana Co. and the Delaware Co. were family holding corporations. The principal investment of the Christiana Co. was in the shares of stock of the du Pont Co. The principal investment of the Delaware Co. was either in the shares of the du Pont Co. or in the shares of the Christiana Co. All of the witnesses are agreed that the principles of valuation to be applied are essentially such as would apply to industrial companies.

The petitioners' witnesses were of the opinion that the valuation could be best obtained by multiplying the average annual earnings of each company, including the undistributed earnings of underlying companies for the three-year period 1925 to 1927, by nine or by eight

for the Christiana Co., and by eight or by seven for the Delaware Co. Counsel for the respondent submits that these multipliers are far too small in the light of all of the evidence in the case. The petitioners' witnesses have cited authorities on "valuation" to the effect that the value of industrial stocks are in many cases determined by multiplying the average annual earnings over a three or five-year period by ten or a smaller multiplier.

The evidence in this case shows that the shares of common stock of General Motors Corporation, on November 19, 1927, sold at a low of 132 and at a high of 132⅝. The earnings of that company for 1927, not including undistributed earnings of subsidiary companies, are shown by the corporation's annual report as having amounted to $12.99 per share. The sale price of the shares on the date of the death of the decedent was, therefore, approximately ten times the earnings for the year.

The earnings of the du Pont Co., including the company's equity in the undistributed earnings of certain subsidiaries of that company, including its proportionate share of the undistributed earnings of the General Motors Corporation for the years 1923 to 1927, inclusive, were $24.70, $17.62, $28.78, $21.89, and $24.06, respectively, per share, computed upon the basis of the number of shares outstanding at the close of each year. The median between the high and the low market price of the shares computed on the number of shares outstanding at the close of each year was 127⅜, 127, 183⅝, 139, and 256, respectively. Upon the basis of such median prices the du Pont shares sold on the market at approximately five times the earnings for the years 1923 and 1925, at six times the earnings for 1924, 1925, and 1926, and at ten times the earnings for 1927. They sold at approximately thirteen times the 1927 earnings on November 19, 1927.

The Board is of the opinion that the fair market value of the shares of the Delaware Co. would be a somewhat smaller times average annual earnings for the three-year period than in the case of the Christiana Co. shares. The reason for this is that the estimated earnings of the underlying companies might suffer some attrition in passing through the treasuries of the several corporations. This might arise from expenses of the companies and from future taxes which might be imposed upon the several corporations. The earnings of the subsidiaries of the General Motors Corporation would be received by the Delaware Co. by being passed through the treasuries of the General Motors Corporation, the du Pont Co., and the Christiana Securities Co.

We think it clear that an investment in the shares of stock of the Christiana Co. or of the Delaware Co. would be less attractive than

an investment in either the stock of the General Motors Corporation or the du Pont Co. There was no established market for the shares of either the Christiana Co. or of the Delaware Co. The public did not generally know of the existence of the companies. Little information regarding them could be obtained from financial publications. A purchaser of the shares would find no established market for them in case he desired to sell them. He would further find that the shares were not acceptable as collateral for loans with banks, since there was no established market for them.

It should also be noted that a purchaser of the Christiana Co. shares or of the Delaware Co. shares did not have any direct interest in the shares of stock owned by these companies as investments. A purchaser was not in any position to take advantage of the high prices which were obtaining in the market for the du Pont Co. shares. The history of the Christiana Co. shows that it had held its interest in the du Pont Co. for a period of many years without any substantial change in the number of shares held. The same is also true of the Delaware Co. The shares owned by these companies were not for sale. The companies were not operated, as many investment trusts, with an idea of selling the shares on a favorable market. Therefore, a prospective investor would look primarily to the earnings of the company from dividends to be received on its investments.

The earnings of the Christiana Co. for 1927 were $81.67 per share and the dividends paid were $70 per share. From a careful study of all of the evidence the Board is of the opinion that a prospective purchaser might expect to receive over a period of future years dividends of $70 per share and perhaps somewhat more, although, of course, the earnings would be affected by business conditions.

From a consideration of all of the evidence the Board has reached its conclusion that the fair market value of the Christiana Co. shares on November 19, 1927, was $1,000 per share and of the Delaware Co. shares, $8,500 per share.

At the rehearing of this proceeding counsel for the petitioners made an additional claim for the deduction from the gross estate of administration expenses consisting of commissions to be paid to the executors, and additional attorneys' fees in connection with the litigation. Such fees paid or payable are a legal deduction from gross income. It does not appear, however, that any executors' fees have been paid or that any ever will be paid. In the absence of any showing of payment they may not be allowed as a deduction. Attorneys' fees paid or payable are deductions from the gross estate.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*