T.C. Memo. 1996-378


UNITED STATES TAX COURT


GAYLORD W. GREENLEE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 16615-94.                    Filed August 15, 1996.


    P was the sole participant and plan administrator
of a pension plan for corporation A and owned 18
percent of an unrelated corporation, C.  In 1982, P
requested the plan's independent trustee to consider
lending trust funds to C.  The trustee had full
investment discretion under the plan's trust document
and authorized the loan.
    <u>Held</u>:  P is not subject to the 5-percent excise
tax of sec. 4975(a), I.R.C., because he did not engage
in a prohibited transaction under sec. 4975(c)(1)(E),
I.R.C.


Gaylord W. Greenlee, pro se.

<u>Julia L. Wahl</u>, for respondent.

MEMORANDUM OPINION

LARO, Judge:  Gaylord W. Greenlee petitioned the Court to redetermine respondent's determinations of the following Federal excise tax deficiencies and additions thereto.

| Year | Excise Tax Sec. 4975(a) | Excise Tax Sec. 4975(b) | Additions to Tax Sec. 6651(a)(1)[1] |
|------|------|------|------|
| 1985 | $1,711 | --- | $428 |
| 1986 | 2,364 | --- | 591 |
| 1987 | 3,084 | --- | 771 |
| 1988 | 3,872 | --- | 968 |
| 1989 | 4,721 | --- | 1,180 |
| 1990 | 5,599 | $111,839 | 1,400 |

[1]In the notice of deficiency, respondent determined the additions to tax as follows:

| Year | Additions to Tax Sec. 6651(a)(1) |
|------|------|
| 1985 | $ 813 |
| 1986 | 1,123 |
| 1987 | 1,403 |
| 1988 | 1,529 |
| 1989 | 1,581 |
| 1990 | 1,539 |

Then, in her reply brief, she conceded that the correct additions to tax are as stated in the text.

The primary issue for decision is whether petitioner engaged in a prohibited transaction so as to be subject to the first-tier excise tax under section 4975(a).  We hold he did not.  Based on our holding, we also hold that petitioner is not subject to the

second-tier excise tax under section 4975(b) and the additions to tax under section 6651(a)(1). Unless otherwise indicated, section references are to the Internal Revenue Code applicable to the years in issue. Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

This case has been submitted fully stipulated under Rule 122. The stipulations and the exhibits attached thereto are incorporated herein by this reference. Petitioner resided in Prospect, Pennsylvania, when he filed his petition.

Petitioner is the sole participant and the plan administrator of the Gaylord W. Greenlee, P.C., Profit Sharing Plan and Trust (Plan).[1] Article X of the Plan document sets forth the following responsibilities for the plan administrator:

> The Plan Administrator shall, as named fiduciary, have exclusive authority to control and manage the operation and administration of the Plan. The Plan Administrator shall perform all general administration duties under the Plan, including (but not limited to) the following:
>
> (a) To determine all questions relating to the eligibility of Employees to participate or to continue participation;
>
> (b) To compute, certify and direct the Trustee with respect to the amount and kind of benefits to which any Participant or Beneficiary is entitled;

---

[1] Petitioner is, and at all relevant times was, a lawyer duly licensed to practice in Pennsylvania.

- 4 -

(c)  To authorize and direct the Trustee with respect to all disbursements from the Trust Fund;

(d)  To maintain all records and, if the Employer has so elected in * * * [the Adoption Agreement], the books of account necessary for the administration of the Plan;

(e)  To interpret the provisions of the Plan and to make and publish such interpretive or procedural rules as are not inconsistent with the Plan and applicable law;

(f)  To advise the Trustee regarding the short and long term liquidity needs of the Plan in order that the Trustee might accordingly manage the investment of Plan assets;

(g)  To advise and assist any Participant or Beneficiary regarding any rights, benefits or elections available under the Plan;

(h)  To prepare and file such reports and documents as may be required under ERISA, the Internal Revenue Code, or other applicable law;

(i)  To provide to Participants and Beneficiaries such information and Plan descriptions, reports or copies of Plan documents as may be required by law;

(j)  To dispose of claims for benefits under the Plan by Participants or Beneficiaries, pursuant to * * * [the plan's "Claim Procedure" provision]

(k)  To perform such other duties under the Plan as may be assigned by the Employer.

Union National Bank of Pittsburgh (Union National Bank) is the sole trustee of the Plan's trust.  Article XI of the Plan document sets forth the following provisions concerning the trustee's responsibilities:

The Employer establishes with the Trustee a trust consisting of such sums of money, and such property acceptable to the Trustee, as shall from time to time

be contributed under the Plan and paid or delivered to the Trustee.  All such money and property, all investments and reinvestments made therewith and proceeds thereof, and all earnings and profits therein, less any losses thereon, and less the payments which at the time of reference shall have been made by the Trustee as authorized herein are referred to as the "Trust Fund."  The Trustee shall hold, invest, and deal with the Trust Fund in accordance with this Prototype Plan and Trust Agreement, the Adoption Agreement and ERISA.

*        *        *        *        *        *        *

Except to the extent the Trustee is directed under * * * [the provision on "Investment in Life Insurance Contracts"] to invest in life insurance contracts, the Trustee shall invest and reinvest the Trust Fund, without distinction between principal and income, and without liability for the payment of interest thereon, in such property as the Trustee in its sole discretion deems advisable, except that such discretion shall be exercised in compliance with any funding-policy guidelines communicated to the Trustee pursuant to * * * [the provision on "Plan Funding Policy"].  The Trustee shall not be obligated to restrict Trust Fund investments to property of a character authorized for investment by trustees under the law of any state, district or territory.

*        *        *        *        *        *        *

The Trustee shall not engage in or cause the Trust to engage in any transaction if it knows or should know, through normal business sources (excepting information received by any of its departments other than the Trust Department, which shall not be imputed to the Trustee), that such transaction constitutes a prohibited transaction under ERISA which has not been exempted by the Secretary of Labor from the restrictions otherwise imposed upon prohibited transactions by ERISA.

The Employer shall provide the Trustee with such information concerning the relationship between any person or organization and the Plan or the Employer as the Trustee may reasonably request in order to determine whether or not such person or organization is a party-in-interest with respect to the Plan.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

Except as otherwise provided in \* \* \* [the Adoption Agreement](relating to accounting duties), the Trustee shall not be responsible for administration or interpretation of the Plan, but shall be responsible solely for the investment and safekeeping of the Trust Fund.

On August 28, 1982, petitioner, as plan administrator, requested the trustee, Union National Bank, to lend $60,000 to Tag Land, Inc. (Tag Land). In connection with this loan, Tag Land executed a note and granted the Plan a first lien on a tract of land in Pennsylvania with a value of at least $375,000. On September 3, 1982, the Trust Investment Committee of Union National Bank approved this investment and forwarded the $60,000 to petitioner to send to Tag Land. When the Plan lent the $60,000 to Tag Land, petitioner owned 18 percent of Tag Land's stock. Petitioner has owned this 18-percent interest since 1982.

The loan bore interest at the rate of 15 percent per year and was payable quarterly, until September 1, 1985, when the principal was due. Since the execution of the loan, Tag Land has made the following payments on the loan:

                Oct. 4, 1982:  quarterly interest payment
                Feb. 25, 1983: quarterly interest payment
                July 21, 1989: $2,000
                Apr. 30, 1990: $5,643

Petitioner has never filed a Form 5330, Return of Excise Taxes Related to Employee Benefit Plans.

## Discussion

The primary issue we must decide is whether petitioner engaged in a prohibited transaction so as to be subject to the first-tier excise tax under section 4975(a). Section 4975(a) imposes a 5-percent excise tax on any disqualified person who participates in a prohibited transaction.

Respondent determined that petitioner is a disqualified person under section 4975(e)(2)(A), (E), and (H) who engaged in a prohibited transaction under section 4975(c)(1)(D) and (E). Respondent's determination is presumed correct, and the burden is on petitioner to disprove her determination. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933); Laird v. Commissioner, 85 F.2d 598, 599 (3d Cir. 1935), affg. 29 B.T.A. 196 (1933). Petitioner argues that he is not a disqualified person who engaged in a prohibited transaction or, alternatively, that he should be exempt from the excise tax.

### A. "Disqualified Person"

The term "disqualified person" includes fiduciaries and people owning 50 percent or more of the corporation sponsoring the Plan. Sec. 4975(e)(2)(A), (E). "Fiduciaries" include persons who exercise discretionary authority over the management of a plan or its assets. Sec. 4975(e)(3). A plan administrator is a fiduciary where he or she has the day-to-day administrative

responsibilities for the plan and the duty to notify beneficiaries and participants on plan matters.  Landry v. Air Line Pilots Association Intl., 901 F.2d 404, 420 (5th Cir. 1990).

Petitioner is a disqualified person under section 4975(e)(2)(E) because he owned 100 percent of the corporation sponsoring the pension plan.  Petitioner is also a disqualified person under section 4975(e)(2)(A).  The Plan document gives the plan administrator general administrative duties including the discretion to interpret plan provisions, provide participants and beneficiaries with plan information, and dispose of benefit claims.  Since petitioner has discretion to manage the administrative aspects of the Plan, he is a fiduciary and a disqualified person.  See sec. 4975(e)(2)(A) and (3).

B.  "Prohibited Transaction"

Respondent determined that petitioner engaged in a prohibited transaction under section 4975(c)(1)(D) and (E).  However, in her posttrial briefs, respondent claims only that petitioner engaged in a prohibited transaction under section 4975(c)(1)(E).  Where the Commissioner fails to address an issue in her opening or reply brief, we may deem that she waived that issue.  See Levert v. Commissioner, T.C. Memo. 1989-333, affd. without published opinion 956 F.2d 264 (5th Cir. 1992).  Accordingly, we find that respondent conceded the section

4975(c)(1)(D) issue, and we limit our discussion to section 4975(c)(1)(E).

Under section 4975(c)(1)(E), a disqualified person engages in a prohibited transaction when, as a fiduciary, he or she "deals with the income or assets of a plan in his [or her] own interest or for his [or her] own account". The regulations provide that "A fiduciary does not engage in an act described in section 4975(c)(1)(E) if the fiduciary does not use any of the authority, control or responsibility which makes such person a fiduciary to cause a plan to [perform the act in question]". Sec. 54.4975-6(a)(5)(ii), Qualified Pension Plan Excise Tax Regs. A fiduciary does not "[deal] with * * * assets of a plan in his [or her] own interest" when he or she absents himself or herself from all consideration of the investment proposal and the trustees make an independent investment decision. See sec. 54.4975-6(a)(6), Example (7), Qualified Pension Plan Excise Tax Regs.

The policy behind the enactment of section 4975 was to tax fiduciaries who engage in self-dealing rather than "innocent employees." S. Rept. 93-383, at 95 (1974), 1974-3 C.B. (Supp.) 80, 174. Before the enactment of section 4975, prohibited transactions would lead to the disqualification of a pension plan. Id. at 94, 1974-3 C.B. (Supp.) at 173. This

disqualification would result in the denial of favorable tax consequences, such as an employee's deferral of taxation.  Id.

Congressional activity in this area is largely designed to protect participants against the "detrimental operation of the plan."  See Pawlak v. Commissioner, T.C. Memo. 1995-7.  The regulations incorporate this policy by suggesting that fiduciaries must act with "undivided loyalty" to the plan.[2]  The general rationale behind these provisions is "to make sure that those who do participate in such [qualified pension] plans do not lose their benefits as a result of unduly restrictive forfeiture provisions."  H. Rept. 93-807, at 1, 2 (1974), 1974-3 C.B. (Supp.) 236, 237.  Instead, the sanctions should be imposed ultimately on the trustee because "trustees generally are to have

---

[2] See sec. 54.4975-6(a)(5)(i), Qualified Pension Plan Excise Tax Regs., which provides:

The prohibitions of [section] 4975(c)(1)(E) and (F) supplement the other prohibitions of section 4975(c)(1) by imposing on disqualified persons who are fiduciaries a duty of undivided loyalty to the plans for which they act.  These prohibitions are imposed upon fiduciaries to deter them from exercising the authority, control, or responsibility which makes such persons fiduciaries when they have interests which may conflict with the interests of the plans for which they act.  In such cases, the fiduciaries have interests in the transactions which may affect the exercise of their best judgment as fiduciaries. * * *

the exclusive authority to manage and control plan assets."
H. Conf. Rept. 93-1280, at 294 (1974), 1974-3 C.B. 415, 455
(emphasis added); S. Rept. 93-383, supra at 95, 1974-3 C.B.
(Supp.) at 173.

Petitioner did not use any of the "authority, control, or
responsibility which makes [him] a fiduciary" to lend the $60,000
to Tag Land. See sec. 54.4975-6(a)(5), Qualified Pension Plan
Excise Tax Regs. Petitioner was absent at the trustee's
discussions regarding the advisability of the loan to Tag Land,
and the Trust Investment Committee of the trustee independently
approved the investment. See sec. 54.4975-6(a)(6), Example (3),
Qualified Pension Plan Excise Tax Regs. Accordingly, the
trustee, rather than the plan administrator, "[dealt] with" the
"income or assets" of the Plan in the subject transaction.

The Plan explicitly states that the trustee should not cause
the trust to engage in any prohibited transaction under the
Employee Retirement Income Security Act of 1974 (ERISA), Pub. L.
93-406, 88 Stat. 829, provisions.[3] It requires the employer to

---

[3] The Plan document provides that it is the trustee that

> shall not engage in or cause the Trust to
> engage in any transaction if it knows or
> should know, through normal business sources
> * * * that such transaction constitutes a
> prohibited transaction under ERISA which has
> not been exempted by the Secretary of Labor

(continued...)

provide the trustee "with such information concerning the relationship between any person or organization and the Plan or the Employer as the Trustee may reasonably request in order to determine whether or not such person or organization is a party-in-interest with respect to the Plan."  Although the Plan document refers to prohibited transactions under ERISA rather than the Internal Revenue Code (Code) specifically, the Code provisions at issue were included in ERISA.  See H. Conf. Rept. 93-1280, supra at 294, 1974-3 C.B. at 415.

Further, the Plan document provides that the plan administrator shall make administrative decisions and the trustee shall make independent investment decisions.  Petitioner requested the independent trustee of the Plan to make a loan from the pension trust to a corporation in which he had an 18-percent stock ownership interest.  Although petitioner suggested the transaction to the trustee, the trustee had exclusive discretion to make investment decisions for the Plan.  Petitioner's recommendations were simply suggestions.  Under the Plan document, the plan administrator's responsibilities were described as "general administrative duties".  This administration included interpreting the Plan provisions,

(...continued)
        from the restrictions otherwise imposed upon
        prohibited transactions by ERISA.

determining eligibility of employees, and maintaining all Plan records.

In contrast, the trustee had "sole discretion" to make investment decisions for the Plan. The trustee was "responsible solely for the investment and safekeeping of the Trust Fund." The trustee had the broad power to "invest and reinvest the Trust Fund, without distinction between principal and income, and without liability for the payment of interest thereon, in such property as the Trustee in it sole discretion deems advisable". This power included the power to withdraw funds from the Plan's trust, the power to diversify its investments, the power to invest in mortgages and evidences of indebtedness, and the power to value its investments. The trustee would generally not be liable for "any loss sustained by the Trust Fund".

The trustee had the discretion and authority to accept or reject petitioner's recommendation. When the Trust Investment Committee of the trustee approved the loan, it did so independently of petitioner's suggestion. It conditioned its decision on petitioner's forwarding of the recorded mortgage and appraisal. Petitioner did not "[deal] with the income or assets of a plan in his own interest or for his own account" and accordingly, did not engage in a prohibited transaction. See sec. 4975(c)(1)(E).

Since petitioner did not engage in a prohibited transaction, he is not liable for the first tier excise-tax, the second-tier excise tax, or the additions to tax determined by respondent. See secs. 4975(a) and (b), 6651(a)(1). We have considered all arguments made by respondent for a contrary holding and, to the extent not discussed above, find them to be without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for petitioner</u>.